## Breeding v. Tandy.

(Decided May 14, 1912.)

### Appeal from Barren Circuit Court.

1. Contracts—Date Which Contract Bears May be Shown to be Erroneous—Parol Evidence—Pleading.—The date which a contract bears may be shown to be erroneous, just as any other part of the contract may be attacked for fraud or mistake; but, before parol evidence showing such error can be introduced, there must be some appropriate plea to support it.

2. Contracts—Charge of Fraud—Pleading.—The charge of fraud does not have to be set out in any particular form. It is sufficient if the facts pleaded amount to a charge that the date, or the provision of the contract sought to be avoided, was inserted by fraud or mistake.

3. Contracts—Imposing Special Restraint.—Where a contract imposes a special restraint, merely prohibiting a party from carrying on a trade at a particular place, or for a designated time, or with certain particular persons, it is valid and enforcible.

4. Contracts—Absence of Fraud or Mistake.—Where appellant and appellee entered into a contract on one day for the purchase by appellant of appellee's livery stable, and four days later appellee executed a contract not to again engage in the business, it is apparent that the parties understood that the first paper did not embody the entire contract and as appellee does not seek to avoid the force and effect of it by a plea of fraud or mistake, and having admitted signing the paper, and not pleading either fraud or mistake in its execution or the date which it bears, he is bound by its terms.

PORTER & SANDIDGE, DUFF & HUTCHERSON for appellant.

C. M. HATCHETT, BAIRD & RICHARDSON for appellee.

OPINION OF THE COURT BY JUDGE LASSING—Reversing.

Prior to May, 1905, F. M. Breeding and P. E. Tandy were each engaged in the livery business in the town of Glasgow, Kentucky, and were active competitors in

said business.  In the latter part of that month Breeding purchased of Tandy his livery outfit, business and the building in which it was conducted, agreeing to pay pay him $3,500 for the personal property and a like amount for the building.  The following writing evidenced the trade:

"Glasgow, Ky., May 27, 1905.

"This agreement between P. E. Tandy and F. M. Breeding, of Glasgow, Ky., Witnesseth: F. M. Breeding has this day bought of P. E. Tandy his entire stock of livery goods, consisting of horses, harness, buggies and all said livery stock of whatever kind, the said Breeding is to pay for said stock $3,500.  Breeding also buys the barn in which said Tandy is doing business for $3,500, the terms of said sale as agreed between said Tandy and Breeding.

"F. M. BREEDING,
"P. E. TANDY."

This was signed on the date which it bears, to-wit, May 27, 1905.  On the 31st of May, or four days thereafter, the following writing was executed by Tandy and delivered to Breeding:

"Glasgow, Ky., May 31, 1905.

"I, P. E. Tandy, of the first part, have this day sold my livery stable to F. M. Breeding of the second part. The party of the first part does hereby agree not to engage in the livery business, as a part or as a whole, in the town of Glasgow, Ky., as long as I am engaged in said business in said town.

"P. E. TANDY."

The purchase price for the livery outfit and real estate was paid by Breeding, and Tandy thereupon ceased to engage in the livery business, until the 31st day of July, 1910, at which time he purchased of one Wilburn a livery business which was being operated by him in said town.  At that time Breeding was still engaged in the livery business.  Following his purchase, Tandy improved the business and at once became an active competitor of Breeding.

On September 7th, following, Breeding instituted a suit, in which he sought to enjoin Tandy from continuing to operate or run a livery business in Glasgow, and asked damages in the sum of $600 for the violation of the contract.  In the petition it is alleged that, in the

writing which was signed by Tandy, by mistake of the draughtsman, the paper was made to read that the party of the first part, which was Tandy, agreed not to engage in the livery business, as a whole or as a part, in the town of Glasgow, "as long as I may engage in said business in said town," when it should read, "as long as the party of the second part is engaged in business in said town," and that the paper in this particular failed to express the true contract and agreement between the parties.

Tandy answered, admitting the execution of the paper, but claimed that it had been executed after the trade with Breeding had been closed, and was done gratuitously and as a favor to Breeding; that it was no part of their contract or trade, and that there was no consideration for the paper. As a further defense, he pleaded that, before he purchased the Wilburn livery business, he procured the consent of Breeding that he might do so, and that, relying on said consent, he had been induced to invest his money in the Wilburn livery business, and that Breeding was, on this account, estopped from attempting to prevent him from engaging in business. The material allegations in the answer were traversed by a reply. The case was prepared for trial and, upon consideration, the Chancellor held that plaintiff was not entitled to the relief sought.

In reaching this conclusion he was evidently influenced by the idea that there was no consideration for the writing signed by Tandy, in which he agreed not to enter into the livery business again in Glasgow while Breeding was engaged in that business. It will be observed that, in the first paper signed by the parties evidencing this contract, the terms and conditions are not set out in full, and by closing same with these words, "the terms of said sale as agreed between said Tandy and Breeding," it is apparent that they understood this paper did not embody their entire contract, and the writing was intended to so state. The word "are" is evidently omitted from said writing and, until it is supplied, this concluding clause in said original contract is meaningless. But when the word "are" is read into said writing, it not only makes sense, but shows the necessity for the execution of the paper which was signed by Tandy on May 31st, the day upon which the cash payment for the livery outfit was made.

Appellee admits executing this paper, bearing date May 31st, and he does not seek to avoid the force and effect thereof by a plea that it was executed through fraud or mistake. He does not deny that it bore the date of May 31st, when it was executed, although he does testify, and introduces some proof tending to corroborate him upon this point, that it was not signed for some days after May 31st. His pleading, however, does not support this proof. He does not plead that there was any fraud or mistake in the execution of the paper bearing date May 31st, nor does he plead that he did not sign the paper on that date, although he does plead that it was not signed for several days after the trade was made; this may be literally true, and yet the paper have been signed on May 31st, for they were several days in making this trade. The date which the contract bears may be shown to be erroneous, just as any other part of the contract may be attacked for fraud or mistake; but, before parol evidence showing such error can be introduced, there must be some appropriate plea to support it. The charge of fraud does not have to be set out in any particular form. It is sufficient if the facts pleaded amount to a charge that the date, or the provision of the contract sought to be avoided, was inserted by fraud or mistake. The plea in the case at bar does not measure up to this requirement, as to the date which the contract bears. Indeed, it is apparent that the pleader did not intend to attack the date which the paper bore, with the view of showing that it was executed on a different date. On the contrary, it is apparent that the whole purpose of this plea was to show that there was no consideration for the contract. Having admitted signing the paper, and not pleading either fraud or mistake in its execution, or the date which it bears, appellee is bound by its terms.

This principle was recognized in the early case of Tribble, etc. v. Oldham, 5 J. J. Mar., 137, in the following language:

"Mistake in the execution of a written contract is a fit subject for the cognizance of the chancellor, but can not be pleaded or proved in a common law action. Fraud, which vitiates anything, or the illegality or the vice of the consideration may be shown and made available at law, as well as in equity. But when the execution of a written contract is admitted without the imputation of

fraud, its terms and stipulations can not be contradicted, varied or denied in a court of law.

"'This principle which applies most emphatically to specialties and to writings required by the statute of frauds and perjuries, is also applicable to all contracts in writing.

"In the Countess of Rutland's case (5th Reports, 26) Coke said: 'It would be inconvenient that matters in writing made by advice and on consideration, and which finally import the certain truth of the agreement of the parties, should be controlled by an averment of parties to be proved by the uncertain testimony of slippery memory; and it would be dangerous to purchasers and to others, in such cases, if such nude averments against matter in writing should be admitted.'

"'The written instrument must be considered as containing the true agreement between the parties, and as furnishing better evidence than any that can be supplied by parol.' Phillip's Evidence, 1 American Edition, 441, and the authorities cited. This is the doctrine of the common law; see the host of authorities cited in 4th H. & M., 85.''

To the same effect are Ehrman v. Stitzel, 121 Ky., 751, 90 S. W., 275; Licking Rolling Mill Co. v. Snyder, 28 R., 357, 89 S. W., 249; Hunter's Admr. v. Miller's Extr., 6 B. M., 612, and I. C. R. R. Co. v. Vaughan, 33 R., 906, 111 S. W., 707.

Considered in the light of these authorities, we hold that the parol testimony offered by appellee, to show that this writing was executed upon a date different from that which it bears, and that the sale had been consummated some time before this writing was executed, can not be considered or received for the purpose of overthrowing these plain provisions of the writing.

The second writing, then, must be considered as having been executed on the 31st of May and the sale concluded on said date, and the two, when considered together, expressing the real contract or agreement into which the parties entered. Undoubtedly, appellee obligated himself at the time he sold his business to appellant not to again enter into competition with him in that town; that is, not to engage in the livery business while appellant was engaged in the same business, and unless this contract is unenforceable as being against public policy, it should be upheld.

While it is universally recognized that contracts in

general restraint of trade are void as against public policy, it has been repeatedly held that, where they impose a special restraint, merely prohibiting a party from carrying on a trade at a particular place, or for a designated time, or with certain particular persons, they are valid and enforceable. Sutton v. Head, 86 Ky., 156; Stovall v. McCutchen, 107 Ky., 577; Pike v. Thomas, 4 Bibb., 486, and Skaggs v. Simpson, 33 R., 410, 110 S. W., 251.

Glasgow is a small town, and it can not be said that, in obligating appellee not to engage in the livery business in that town while appellant was engaged in the same business, appellant was imposing upon appellee an unreasonable restriction. They were active business competitors. There could have been no possible motive on the part of appellant to buy the business of appellee except it was with the understanding that he would rid himself of this competition. The record shows that appellee had a good business, a valuable trade, and it is unreasonable to believe that appellant would have wanted to purchase this business without having some assurance that appellee would not thereafter engage in the same business. The contract into which they entered afforded him this protection. The consideration paid by him for it was adequate; and as the contract merely limited appellee's right to do business in that particular town, and then only so long as appellant should be engaged in the same business therein, it was a valid and enforceable contract.

The only remaining question is, was appellant guilty of such conduct, after the execution of this contract and before appellee again engaged in business in Glasgow, as to estop him from asserting his rights under said contract? While appellee alleges that appellant consented that he might again engage in the livery business in Glasgow, his proof utterly fails to support this plea; for he in person testifies that the conversation with appellant, in which he alleged appellant gave such consent, did not take place until after he had bought the Wilburn stable; and his witness Davis testifies that he had been engaged by appellee to assist him in running the business in the Wilburn stable before the date upon which appellant and appellee had this conversation in which it is claimed appellant gave his consent. Hence, nothing that was done or said by appellant induced appellee to invest his money in the livery business. This evi-

dence is not sufficient to create an estoppel. Appellee was in no wise misled by it. He does not claim that, by reason thereof, he was induced to and did invest his money in the Wilburn stable. He had already done so. It may be that he was lulled into a feeling of security by something that appellant said to him in this conversation and felt that he might further prosecute his livery business without subjecting himself to a suit for damages at the instance of appellant, but if so, the only effect or weight such evidence could have would be to minimize the damages which could be claimed by appellant. In other words, if after appellee had, in violation of their contract, purchased the Wilburn stable, appellant led him to believe that he was not objecting to appellee's running this stable, then appellant would not be heard to say that he had been damaged thereby after that date. Upon consideration of all the evidence, however, we are satisfied that appellant was guilty of no conduct which could by any possibility be construed as a waiver of his rights to have the contract into which he had entered with appellee enforced. Appellee testifies that, when he traded for the Wilburn stable, he had not determined to operate it, but merely took it in a trade for his bus routes. If so, and his purpose was merely to at once or, as suggested by the record, in a short time dispose of same, it is altogether probable that appellant would have interposed no objection. But it further appears that he had materially improved the Wilburn outfit and was, at the date when this case was being prepared for trial, actively engaged in the livery business in said town in clear and open violation of his contract agreement with appellant.

The evidence before us does not show that appellant had, by reason of the operation of the Wilburn stable by appellee, sustained any material damage, but he should have been awarded nominal damages. We are of opinion that the ends of justice are satisfied when a judgment is entered enjoining appellee from engaging in the livery business in Glasgow while appellant is engaged in the same business in said town, and directing him to pay costs.

Judgment reversed and cause remanded with direction to enter such a judgment.