[No. 25045.   Department One.   September 14, 1934.]

UNITED DYE WORKS, *Respondent,* v. SOPHUS STROM *et al., Appellants.*[1]

*Lund & Lund, Gordon B. Dodd,* and *Arthur M. Harris,* for appellants.

*Ballinger, Clark, Mathewson & Force,* for respondent.

MITCHELL, J.—This action was brought by United Dye Works, Inc., against Sophus Strom and his wife and Liberty Dry Cleaners, Inc., for damages for breach of a contract not to engage in the wholesale cleaning

[1]Reported in 35 P. (2d) 760.

and dyeing business in the city of Seattle, and to enjoin further violations of the contract. Upon the trial to the court without a jury, the action was dismissed as to the defendant Liberty Dry Cleaners, Inc., and judgment was entered in favor of the plaintiff against the defendants Strom and wife for damages already suffered by the plaintiff, and against Strom enjoining him, during the pendency of plaintiff's operations in the cleaning and dyeing business in Seattle, from engaging, directly or indirectly, in the wholesale cleaning and dyeing business in that city. Strom and wife have appealed.

In substance, the complaint alleges that plaintiff is a corporation with its principal place of business in Seattle; that Sophus Strom and Petra Strom are husband and wife; that defendant corporation is engaged in a general wholesale cleaning and dyeing business in Seattle; that, on February 25, 1933, Minkove, Strom & Anderson, Inc., sold to the plaintiff its business, consisting of the property, business and good will formerly owned and used by Union Dye Works, Inc.; that plaintiff's business was wholesale cleaning and dyeing; that Sophus Strom, in addition to being an owner of stock in the vendor corporation,

" . . . had been and was then in the wholesale cleaning and dyeing business, and by reason of his then and past employment had become well and favorably known to the cleaning and dyeing trade, and had established a substantial good will and patronage."

It was further alleged in the complaint that, at the date of the sale, Sophus Strom orally agreed with plaintiff's officers and agents that he would wholly retire and withdraw from the wholesale cleaning and dyeing business in Seattle, and would no longer, directly or indirectly, engage therein, nor compete in any manner with the plaintiff in securing and handling

wholesale dry cleaning in the city in the future, personally or otherwise, for any wholesale cleaning and dyeing concern other than that of the plaintiff; that this promise of defendant Strom was a principal consideration for and in connection with plaintiff's purchase, and without which it would not have purchased the Union Dye Works, Inc., from Minkove, Strom & Anderson, Inc.

It was further alleged that Strom violated his agreement and organized the Liberty Dry Cleaners, Inc., doing business in Seattle, for and with which he is employed, and is actively working, in violation of his personal contract, to the damage of the plaintiff in the sum of thirty-two hundred dollars; and that, unless restrained, Strom will continue to violate his contract to the irreparable damage of the plaintiff. The answer consists of appropriate general denials.

Upon the appeal, Strom and his wife assign errors which they discuss as presenting three questions: (1) That the trial court erred in admitting testimony as to the alleged promise of Strom not to re-engage in the wholesale dyeing and cleaning business in the city of Seattle; (2) that the promise, if made, did not constitute an enforceable agreement, and (3) that the evidence is insufficient to show that Strom solicited the customers of the respondent.

On the first proposition, the argument is that the testimony of the oral agreement of Strom violates the rule against the admission of parol or extrinsic evidence to contradict, alter, add to, or vary a written contract; the introduction of the evidence being objected to at the trial upon that ground. But the rule has no application here. The written agreement in this case was between Minkove, Strom & Anderson, Inc., as vendor, and the United Dye Works, Inc., as purchaser or vendee. The testimony objected to related

to the separate oral contract made by Strom at the time the corporation, one-third of whose stock he owned, for a valuable consideration, sold its business to the respondent. The testimony was proper for the purpose of establishing that oral contract, which was separate from and in addition to the written contract.

On the second proposition, it appears to be contended that no agreement was made by Strom, and it is further contended that, if one was made, it was not an enforceable contract. As to whether or not such a contract was made, there was some conflict in the evidence, but upon consideration of all of it we are satisfied that the decision of the trial court that there was a separate agreement with Strom is not only sustained by the greater weight of the evidence, but that the evidence supporting that view is also clear and convincing. The evidence, though not free from conflict, was equally clear and satisfactory as to the terms of the agreement. It was shown, indeed not disputed, that, in Seattle, the business of wholesale cleaning and dyeing is different in kind from retail cleaning and dyeing, the difference being here unimportant. The president-manager of the respondent testified as follows:

"Q. You and Mr. Strom threshed out this matter about his going into the wholesale business very thoroughly, did you not? A. Yes, sir—that was a distinct understanding he would not be a competitor in the wholesale business in Seattle if we took over the Union plant. Q. And you considered it very important? A. Yes, sir, absolutely. Q. And you would not have gone into the deal without that agreement? A. No, sir."

He also testified that Strom could have employment in respondent's business, and the testimony shows that, for a while after the sale, Strom was an employee in the business. Further testimony was to the effect that Strom decided and desired to be free as pro-

prietor or owner from the controversies and competition among the wholesale cleaners and dyers in Seattle, and considered going to Tacoma or some smaller city to engage in business, or perhaps engage in the retail cleaning and dyeing business in Seattle. The testimony further shows that, on account of his experience and manner in waiting upon the trade, Strom excelled in the performance of the particular duties which he had charge of while engaged as an employee in the wholesale business of cleaning and dyeing. All of such testimony on the part of the president-manager of respondent corporation was corroborated by other witnesses.

Upon the question of the enforceability of Strom's agreement, it may be observed generally that suits to enjoin breaches of negative covenants concerning a lawful subject matter are, of course, of equitable cognizance, whereby the validity of such contracts is gauged by the reasonableness of the restraint imposed, as necessary to the protection of the rights of the covenantee. 13 C. J., Contracts, p. 473, § 418. This same authority, continuing the discussion of the subject, says:

"This doctrine is founded on the idea that public policy requires that when a man has by his skill or by any other means obtained something which he wants to sell, he should be at liberty to sell it in the most advantageous way in the market, and in order to enable him to do so it is necessary that he should be able to preclude himself from entering into competition with the purchaser; and therefore the same public policy which enables him to do that should not forbid him from alienating what he wants to alienate, but should permit him to enter into any stipulation, however restrictive it may be, provided such restriction in the judgment of the court is not unreasonable, having regard to the subject matter of the contract."

Certainly, it cannot be held in this case that there is anything unreasonable or unduly restrictive in Strom's

covenant not to work for another wholesale cleaning and dyeing house in Seattle, else there would be no proper or reasonable protection to one engaged in that business in Seattle who had given a consideration for the promise. The recent cases of *Storer v. Brock,* 267 Ill. App. 138; and *Storer v. Brock,* 351 Ill. 643, 184 N. E. 868, discuss this subject, and, upon reviewing a great many authorities, decide, as tersely stated in the syllabus in the case reported in 351 Ill. 643, as follows:

"Whether a restriction upon the right to practice a profession is unreasonable is a question of law, to be determined under the particular facts of the case, and a contract between physicians, for a valuable consideration, restricting the right of one of the parties to practice medicine independently of the other in the city of Chicago, is not invalid as being against public policy, as the restraint imposed is limited or partial even though it is unlimited as to time."

In this state, in the case of *Barash v. Robinson,* 142 Wash. 118, 252 Pac. 680, we held that an oral agreement, unlimited as to time, not to engage in the business of operating sightseeing vehicles in Seattle, in consideration of the purchase of stock in the corporation engaged in that business, was not void, and that injunction would lie to restrain violations of the contract. In that case, upon the point as to whether the contract was void, it was said:

"As to the first point, the contract is limited as to the place but not as to time. We upheld a similar contract in *Johnson v. Schultz,* 137 Wash. 584, 243 Pac. 644. It does not appear, however, that this precise point was raised in that case. However, the great weight of authority supports the validity of such contracts. Some of the authorities to that effect are as follows: *Kramer v. Old,* 119 N. C. 1, 25 S. E. 813, 34 L. R. A. 389, not to continue the business of milling in the vicinity of Elizabeth City; *Smith v. Webb,* 176 Ala. 596, 58 South. 913, 40 L. R. A. (N. S.) 1191, not to

engage in the livery business in opposition to R. J. Smith in Pell City; *Foss v. Roby,* 195 Mass. 292, 81 N. E. 199, 10 L. R. A. (N. S.) 1200, not to practice dentistry, the agreement by implication being limited to the city of Boston; *Southworth v. Davison,* 106 Minn. 119, 118 N. W. 363, 19 L. R. A. (N. S.) 769, not to engage in the laundry business within a radius of five miles from the city of Northfield; *Scherman v. Stern,* 93 N. J. Eq. 626, 117 Atl. 631, not to engage in selling cigars, stationery and candy in a given borough of about 3500 population; *Lappono v. Marmone,* 204 App. Div. 496, 198 N. Y. Supp. 433, not to engage in the hat cleaning and shoe repairing business within a radius of six blocks; *Randolph v. Graham,* 254 S. W. (Tex. Civ. App.) 402, not to practice medicine in or within twenty miles of Schertz; *Dow v. Gotch,* 113 Neb. 60, 201 N. W. 655, not to engage in the hair or facial treatment or as a manicurist in the city of Grand Island; *Breeding v. Tandy,* 148 Ky. 345, 146 S. W. 742, not to engage in the livery business in the town of Glasgow; *Weickgenant v. Eccles,* 173 Mich. 695, 140 N. W. 513, not to engage in mercantile business in Battle Creek.

"13 C. J. pp. 469, 470, § 416, speaks of the rule as follows:

" 'Even according to the early rule, it is no objection to an agreement reasonably limited in point of space that it is unlimited in point of time and may therefore continue during the whole life of the party restrained. Thus the courts have repeatedly sustained as valid agreements by the vendor of a business, trade, or profession, or by employees, etc., without limitation as to time, not to carry on the business, trade, or profession in a certain town, village, city or county, even though it be a large city; within certain limits in a city; in a town or city, and vicinity; or at any place which will interfere with the business sold. The courts have also sustained an agreement not to run a stage on a specified road, and an agreement by a vendor of a milk route not to serve milk over the same route.'

"See, also, 6 R. C. L. 799-800; Elliott on Contracts, § 812."

In that case, Robinson had established a sightseeing business which was a thing of value that he wanted to sell and did sell for a valuable consideration; and it was, in legal effect, held not to be unreasonable to compel him to comply with his agreement in making sale of the business for a valuable consideration.

Appellant relies largely on *Schneller v. Hayes,* 176 Wash. 115, 28 P. (2d) 273. That case, however, in principle, is clearly distinguishable from this, and what is there said must be considered in connection with the facts of that case. It was a suit in equity to enjoin the defendant from violating an alleged agreement not to engage, as owner, in business as optometrist or optician in the city of Walla Walla, or within one mile of the city limits, no time limit being fixed. In the first place, the decision in that case holds that the so-called contract was without consideration, hence, in legal effect, no contract at all. Then, in the concluding paragraph, upon speaking of cases enjoining the breach of contracts not to engage in business, it is said:

*"The contract here is unlimited as to time, and its enforcement would forever prohibit respondent from carrying on his business in the city of Walla Walla, and this in the face of the fact that he was induced to remove his family there on the promise of employment by appellant at an agreed compensation—a promise appellant was either unwilling or unable to carry out."* (Italics ours.)

This language, in the opinion refusing to enforce the purported contract that would forever prohibit respondent from carrying on business in the city of Walla Walla, is especially seized upon by the appellant. But what else could the decision have been? The so-called contract was not a contract at all, because of the lack of any consideration, and, moreover, the court

was faced with a situation where the plaintiff had put the defendant to the expense of removing his family to Walla Walla on the promise of employment that the plaintiff was either unwilling or unable to carry out, thus suggesting or establishing inequities against the plaintiff that were so strong the court would have been compelled to deny any relief to the plaintiff, even if the alleged negative covenant of the defendant, so far as time was concerned, instead of being unlimited had been limited to a very short period of time. In the present case, however, there are no such inequities alleged or proven against the respondent. The oral contract involved in this case is legal and subject to enforcement.

Other authorities cited on behalf of the appellant have been examined and, in our opinion, are not sufficiently in point to justify a discussion of them.

Upon the last proposition, it must be held that the greater weight of the evidence shows that Strom successfully solicited customers of the respondent.

Judgment affirmed.

BEALS, C. J., MAIN, MILLARD, and STEINERT, JJ., concur.