[No. 33944.    Department Two.    April 18, 1957.]

CLARENCE H. COLBY *et al., Respondents,* v. LEO J. McLAUGHLIN, *Appellant.*[1]

*Roy A. Redfield,* for appellant.

*Hennessey & Curran,* for respondents.

[1] Reported in 310 P. (2d) 527.

ROSELLINI, J.—The plaintiff Clarence H. Colby owns property known as the Elk Drugstore building (hereafter referred to as lot 6), located on the southeast corner of Pacific avenue and Cannon street, in Spokane; the defendant, Leo J. McLaughlin, owns and operates McLaughlin's IGA Market (hereafter referred to as lot 1), located at the southwest corner of Pacific avenue and Cannon street. This action was brought to enjoin the defendant from maintaining a drugstore, or selling wine, beer, or ice cream in his market, for a period of twenty-five years from the date of an alleged agreement, executed on June 8, 1940, between F. E. Martin, Elizabeth Martin, Hanna E. Kastell, and the plaintiff Colby. The defendant inherited from Hanna E. Kastell an undivided one-fourth interest in the property on which he is now operating the IGA Market.

The plaintiff John R. Kopet, as lessee of the Elk Drugstore building, likewise seeks to enjoin McLaughlin in the same manner and for the same period.

The case calls into question the binding force of the agreement referred to, coupled with two deeds made by Hanna E. Kastell to Clarence H. Colby, one dated June 6, 1940, and the other June 8, 1940.

The deed executed on June 8, 1940, contained the following provision, which was not contained in the deed executed June 6, 1940:

"The rights, interest and estate which the Grantee herein takes hereof under this deed shall be subject to the condition for twenty-five (25) years, that no grocery store, meat market or vegetable market shall be conducted on the aforesaid premises, and compliance with the same may be enforced by injunction."

The deed also recites: "This deed is made for correcting deed executed on June 6, 1940."

Both of these deeds and the agreement between Martin and wife and Hanna Kastell, on the one part, and Clarence H. Colby on the other, were executed and acknowledged before the same notary public. The agreement executed on June 8, 1940, contains the following provision:

"It is, therefore, AGREED that for and in consideration of One ($1.00) Dollar and other valuable consideration, the said parties of the first part agree to and with the party of the second part that no drugstore, or business of selling wines or beers, or ice cream shall be maintained on the aforesaid premises for a period of twenty-five (25) years from the date hereof.

"The covenants, terms and conditions hereof shall extend to and be binding upon the successors, executors, administrators and assigns of the parties hereto."

The evidence disclosed that at one time, and prior to the agreement of June 8, 1940, the plaintiff Colby was a tenant on lot 1, then owned by the Martins and the widow Kastell. He was operating a drugstore in connection with the store business which was being conducted on the lot at that time, and among the items handled by him were beer, wine, and ice cream. By the deeds referred to, he acquired a portion of lot 6, which is directly east of lot 1, but across Cannon street. After acquiring this property, he relinquished the drug business on lot 1, and erected on lot 6 a building, now the Elk Drugstore, in which, until the property was leased to Kopet, he continuously conducted a drug business, either alone or in partnership with another.

It was undisputed that Leo McLaughlin, who has been operating the IGA Market since September, 1952, knew of the agreement and complied with the restrictions placed upon lot 6 until sometime in July of 1955, at which time he started selling wine, beer, and drugs, and now refuses to refrain from doing so.

Sometime prior to his commencing the sale of these commodities, he conferred with Mr. Colby about modifying the restrictions to permit the sale of beer, wine, and ice cream. Mr. Colby said he would discuss the matter with his then partner, the present lessee, and it was communicated to McLaughlin that he could sell ice cream but not wine, beer, and drugs. At the time of the trial, he was selling these items.

The trial court found that the agreement not to compete was made contemporaneously with the transfer of lot 6 and was incident thereto. The court concluded that the

agreement was not contrary to public policy and that the defendant was bound by its terms.

The defendant was enjoined from maintaining a drugstore or selling beer and/or wine in the market located on lot 1 for a period of twenty-five years from the date of the agreement, and the lessee, Kopet, was awarded nominal damages for the breach of the covenant.

Two questions are raised on appeal: (1) whether the evidence sustains the court's finding that the deed of June 8, 1940, was executed to correct the deed of June 6, 1940, and that the parties at all times intended that the restrictions contained in the deed and agreement should be impressed upon the lots in question and that these mutual agreements were of the essence of the transaction, and (2) whether the court correctly held that the agreement did not constitute an unlawful restraint of trade.

The only evidence concerning the first question was the instruments themselves. The plaintiff attempted to elicit testimony concerning the negotiations leading up to their execution, but on the objection of the defendants, the evidence was excluded under the "dead man statute" (RCW 5.60.030), by reason of the fact that one of the parties, Hanna E. Kastell, was deceased. The deed executed on June 8, 1940, recited that it was "made for correcting deed executed on June 6th, 1940." In the absence of evidence to the contrary, the recitals contained in a deed are conclusively presumed correct. *Marvin v. Yates,* 26 Wash. 50, 66 Pac. 131. Consequently, the court could only conclude that the mutual covenants not to compete were incident to the transfer of lot 6.

The appellant concedes that a covenant not to compete, if made in connection with the transfer of a business or other property, is enforcible if it is reasonable and not contrary to public policy. But he maintains that the agreement which his predecessor entered into protects no legitimate interest of the covenantee, is unreasonable in duration, and is contrary to the public interest.

It is evident that the owner of lots 1 and 6 exacted the agreement not to engage in a grocery business for the pur-

pose of protecting the business which was being conducted on lot 1; and, in return, the purchaser of lot 6 desired to protect the value of his acquisition by securing an agreement on the part of the sellers not to sell, in their store, items which would be in competition with his business.

In *Messett v. Cowell,* 194 Wash. 646, 79 P. (2d) 337, we held that this type of covenant protects a legitimate interest of the covenantee. Quoting from 3 Williston on Contracts 2888, § 1642, we said:

" 'The only limits imposed by the law on the owner of property restricting his power to exact contracts from a subsequent purchaser to refrain from using the property in a certain way are those imposed by public policy, and though public policy forbids unreasonable restraint of trade, and therefore forbids a system of contracts attempting to control prices on resale, there seems no reason why it should prohibit contracts which reasonably protect a business of either buyer or seller without tending to affect the public injuriously by monopoly or enhancement of prices.' "

It is not suggested that a restriction as limited as that imposed upon the defendant could tend to create a monopoly or enhance prices. Only two lots are affected, and the parties are free to compete with each other on any other property. Either could acquire the property adjoining their places of business and enter into competition. But it was foreseen by the original parties that such competition would be beneficial to neither of the businesses.

The defendant relies upon *Clemons v. Meadows,* 123 Ky. 178, 94 S. W. 13, 6 L. R. A. (N.S.) 847. In that case, owners of adjacent hotels entered into an agreement whereby, for a cash consideration, one owner agreed to abandon his business and not compete with the other. The Kentucky court held this agreement an unlawful restraint of trade, since the public was deprived of needed hotel facilities. The most obvious distinction between that case and this is that no transfer of property was involved. A further distinction is that the court found the hotel to be a quasi-public institution, and held that the owner had endeavored, by contract, to rid himself of a duty imposed upon him by

law. The case is not persuasive in determining the questions presented here.

The defendant also argues that the contract should not be upheld because no element of good will was involved in the sale. This argument is based upon the misconception that unless good will is transferred with the property conveyed, or is to be protected in the business retained by the seller, the purchaser has acquired, or the seller has retained, no interest which will justify an agreement not to compete. There are many cases in which covenants not to compete have been enforced even though the transfer of the good will of a business was not involved. Among them is *Messett v. Cowell, supra.* In selling a tract of land on Orcas Island in San Juan county, the seller had exacted a covenant not to use any of the lime rock on the premises for the purpose of making or burning lime. He objected to this use because it would be in competition with his lime manufacturing business on San Juan Island. We held that the agreement was enforcible.

Nor is the length of time for which the restriction shall endure unreasonable. The covenant not to compete is as valuable to both parties today as it was when it was made, and the protection from competition will continue only so long as the restriction continues. The covenants which we upheld in *Messett v. Cowell, supra,* and in *United Dye Works v. Strom,* 179 Wash. 41, 35 P. (2d) 760, were unlimited in duration. In the latter case, we held that if the contract is limited as to place, it is no objection that it is unlimited as to time. The opinion contains a long list of authorities supporting the validity of such contracts.

And, as we have said, since only two businesses are involved, no monopoly or enhancement of prices could result; consequently, the agreement is not contrary to public policy.

The judgment is affirmed.

HILL, C. J., SCHWELLENBACH, DONWORTH, and FOSTER, JJ., concur.