[No. 4153-II. Division Two. August 4, 1981.]

THE STATE OF WASHINGTON, *Respondent,* v. ROY LEE TAYLOR, *Appellant.*

*W. Stephen Gregorich,* for appellant.

*Don Herron, Prosecuting Attorney,* and *James Finnell, Deputy,* for respondent.

PETRIE, J.—Roy Lee Taylor appeals his conviction of first degree extortion. We have reviewed defendant's assignments of error relating to waiver of jury, midtrial confession hearing, sufficiency of evidence, and adequacy of counsel. We find no error. Accordingly, we affirm.

Ron Chase is the owner and operator of the Night Moves Tavern, a south Tacoma establishment which serves food and alcoholic beverages and is well known for its fare of adult entertainment—topless female dancing. The unchallenged findings of the trial court establish that there are similar taverns in Pierce County which to some extent share clientele with the Night Moves Tavern, resulting in active business competition.

In the early evening of October 19, 1978, Taylor entered the tavern and engaged Chase in a conversation. He contends that he never threatened Chase, but that he merely repeated to Chase a conversation which he had earlier overheard in a bowling alley. Chase gave a distinctly differ-

ent account of the conversation. According to Chase, Taylor repeatedly asked Chase if he was the owner. Chase answered affirmatively and spelled his name at defendant's request. Defendant told Chase his business was hurting others and if Chase didn't close down and leave town in 10 days he [Chase] was "dead." Taylor said he was "just a messenger" but that a friend of his would do the shooting. Pointing his finger at Chase's chest, defendant warned that the prospective assailant "had a .45, a big one" which "he got his jollies with" and "he liked to shoot people right here." Taylor told Chase not to bother calling local authorities. The threat was repeated several times during the 20-minute conversation. On leaving the tavern defendant tried to kiss Chase on the cheek. At Chase's direction a tavern employee followed Taylor outside and obtained a description of his car. Charges of first degree extortion were filed after an investigation.

Following a bench trial, the court accepted the victim's account of the encounter while rejecting defendant's version that he never threatened Chase. This appeal follows defendant's conviction of first degree extortion.

Initially, Taylor contends he did not knowingly and voluntarily waive his right to jury trial. We review, briefly, the trial procedure which preceded his waiver. The court opened juror voir dire by asking if anyone knew of the Night Moves Tavern. One venireman responded he had read about the "San Francisco matter." This appears to have been a reference to a recent federal trial in San Francisco of Pierce County officials and residents charged with racketeering. The Night Moves Tavern and Mr. Chase were targets of the racketeering activity. The court asked the venire to leave the courtroom. An extended colloquy between defendant, his counsel, and the court ensued. Taylor expressed his concern that he could not get an impartial jury in Pierce County and requested the trial be held elsewhere. In lieu of a change of venue he would accept being tried to the court in Pierce County, but he did not think he could get a fair jury trial in Pierce County.

Before discussing the waiver of a jury trial the court determined that defendant had completed a year and one–half of college and that he was satisfied with his appointed counsel. The court explained the options available to defendant and that if he chose to be tried to the court he could not move for a change of venue. When asked if he wanted to proceed with the judge alone in Pierce County, Taylor responded affirmatively. He then signed a CrR 6.1 waiver form prepared by counsel. Placed under oath, he asserted that the statements made in the waiver were true. In response to the court's inquiry, the prosecutor stated that he believed the matter was covered adequately and that defendant understood the alternatives.

█ The right to a jury trial may be waived so long as the waiver is intelligent and voluntary. *State v. Forza,* 70 Wn.2d 69, 422 P.2d 475 (1966). CrR 6.1(a) requires a written waiver to insure defendant's waiver of the right to jury trial is knowingly, voluntarily, and intelligently made. *State v. Bray,* 23 Wn. App. 117, 594 P.2d 1363 (1979). Taylor argues that every reasonable presumption against waiver of the right to jury trial should be indulged in, citing *State v. Wicke,* 91 Wn.2d 638, 645, 591 P.2d 452 (1979), and *Little v. Rhay,* 8 Wn. App. 725, 509 P.2d 92 (1973). We decline to indulge in the presumption invoked by defendant in the face of a written waiver and a record which indicates an extensive and thorough interrogation by the court on the issues. After reviewing the record we conclude that Taylor knowingly, voluntarily, and intelligently waived his right to jury trial. *See State v. Wiley,* 26 Wn. App. 422, 613 P.2d 549 (1980).

█ By pro se brief Taylor contends he was denied a fair trial because the court interrupted the trial in order to hold a CrR 3.5 confession hearing and rule on the admissibility of any statements made by defendant to law enforcement officers. This procedure does not precisely conform to the bifurcated procedure contemplated by the rules, CrR 3.5, 4.5, but we find no error. The purpose of a pretrial confession proceeding is to allow the court, prior to trial, to rule

on the admissibility of sensitive evidence. This enables both parties to determine the weaknesses in their cases, avoid midtrial surprises and continuances and, additionally, encourages settlement. *State v. Wilson,* 29 Wn. App. 895 (1981). *See* Criminal Rules Task Force, *Washington Proposed Rules of Criminal Procedure,* Comment, at 63 (1971). Pretrial hearings are but mechanical devices designed to effectuate substantive rights and remedies. *State v. Wilson, supra.* Absent a showing of prejudice a midtrial confession proceeding cannot be deemed a denial of due process. *See generally Withrow v. Larkin,* 421 U.S. 35, 56, 43 L. Ed. 2d 712, 95 S. Ct. 1456 (1975).

In his pro se brief Taylor also challenges his conviction by contending that even under the victim's version of the incident the evidence is insufficient to prove that defendant committed the crime of first degree extortion as charged by the information and defined by statute. Thus, he contends, not all essential elements of the crime were proved beyond a reasonable doubt and the information should have been dismissed.

The information charged that on October 19, 1978 defendant

> by means of a threat to cause bodily injury or death in the future to Ronald Chase, did knowingly attempt to obtain property from Ronald Chase, the owner thereof,[1]

The record and the trial court's findings of fact clearly establish that defendant threatened bodily injury in the

---

[1]RCW 9A.56.120 defines first degree extortion as "extortion by means of a threat as defined in RCW 9A.04.110(25)(a), (b), or (c)."

RCW 9A.56.110 defines "extortion" as follows:

"'Extortion' means knowingly to obtain or attempt to obtain by threat property or services of the owner, as defined in RCW 9A.56.010(8)."

RCW 9A.04.110(25) defines "threat":

"'Threat' means to communicate, directly or indirectly the intent:

"(a) To cause bodily injury in the future to the person threatened or to any other person . . ."

RCW 9A.56.010(8) defines "owner" as follows:

"'Owner' means a person, other than the actor, who has possession of or any other interest in the property or services involved, and without whose consent the actor has no authority to exert control over the property or services;"

future to Ronald Chase. The thrust of his assignment of error is that the record is devoid of any indication that he "did knowingly attempt to obtain property from Ronald Chase, the owner thereof." The trial court's unchallenged findings on this issue are as follows:

> The Night Moves Tavern is a commercial establishment located in Pierce County open to the public, which sells at retail beverages and food, and which offers entertainment in the form of female dancers and recorded music. Operation of this business enterprise has resulted in substantial profits to its owner, Ron Chase. There are other similar taverns in Pierce County and they share, to some extent, the same customers. This has led to active business competition.

> Closure of The Night Moves Tavern would, in fact, lead to a loss of income to its owner and elimination of the competition for customers presented by its continued operation.

> . . .

> Roy Taylor told Chase that Chase's tavern business was hurting other businesses in the area and that if Chase did not close his tavern business and leave town within ten days, Chase would be shot and killed.

■ In view of those findings, we perceive defendant's contention to be twofold: (1) Neither the record nor the findings establish that he obtained or attempted to obtain anything for himself; and (2) neither the record nor the findings indicate that he obtained or attempted to obtain any "property," either for himself or for another. We hold (1) that the extortion statutes do not require that the person communicating the threat be attempting to obtain anything for himself; it is sufficient that there be an attempt to obtain something for another; and (2) that either (a) the deprivation of a victim's income from a commercial establishment or (b) the elimination of business competition, when either is attempted or obtained for the benefit of another, satisfies the extortion statute's requirement that the extortioner's threat "obtain or attempt to obtain" the "property" of an owner thereof.

■ Although penal statutes should be strictly construed

so that conduct which is clearly and manifestly within the statutory terms is subject to punitive sanctions, the intent of the legislature should not be defeated by a forced, narrow, or excessively strict construction. *State v. Rinkes,* 49 Wn.2d 664, 306 P.2d 205 (1957); *State v. Carter,* 89 Wn.2d 236, 570 P.2d 1218 (1977). In determining the intent of the legislature, we examine the statutory scheme as a whole. *Automobile Drivers & Demonstrators Local 882 v. Department of Retirement Sys.,* 92 Wn.2d 415, 598 P.2d 379 (1979).

The word "obtain" is not specifically defined in the criminal code. Nevertheless, two closely related terms employed in the definition of "theft" (RCW 9A.56.020), "obtain control over" and "wrongfully obtains", are further defined in the chapter of the code which defines and classifies the crimes of theft, robbery, and extortion. RCW 9A.56.010(6), (7).[2] Definitions are integral to the statutory scheme and of the highest value in determining legislative intent. *State v. Leek,* 26 Wn. App. 651, 614 P.2d 209 (1980). To ignore a definition section is to refuse to give legal effect to a part of the statutory law of the state. 1A C. Sands, *Statutory Construction* § 27.02, at 310 (4th ed. 1972). The relevant definition sections make it clear that a theft may be committed on the actor's behalf or on behalf of another. We cannot find, reading the chapter as a whole, that the legislature

---

[2]RCW 9A.56.010(6) and (7) provide as follows:

"(6) 'Obtain control over' in addition to its common meaning, means:

"(a) In relation to property, to bring about a transfer or purported transfer *to the obtainer or another* of a legally recognized interest in the property; or

"(b) In relation to labor or service, to secure performance thereof for the benefits of the *obtainer or another;*

"(7) 'Wrongfully obtains' or 'exerts unauthorized control' means:

"(a) To take the property or services of another; or

"(b) Having any property or services in one's possession, custody or control as bailee, factor, pledgee, servant, attorney, agent, employee, trustee, executor, administrator, guardian, or officer of any person, estate, association, or corporation, or as a public officer, or person authorized by agreement or competent authority to take or hold such possession, custody, or control, to secrete, withhold, or appropriate the same *to his own use or to the use of any person* other than the true owner or person entitled thereto . . ." (Italics ours.)

intended a different result for the crime of extortion. Although defendant did not attempt to obtain anything from the victim for himself, the record is sufficient to sustain a finding that he intended that a third party benefit by his actions.

We next turn to whether there was an attempt to obtain "property" from the victim. Property, for purposes of the extortion statute means "anything of value, whether tangible or intangible, real or personal." RCW 9A.04.110(21). It is well settled that an agreement not to compete in a competitive and lucrative market is property under statutory schemes prohibiting theft in the form of extortion. *United States v. Tropiano,* 418 F.2d 1069 (2d Cir. 1969); *People v. Spatarella,* 34 N.Y.2d 157, 313 N.E.2d 38, 356 N.Y.S.2d 566 (1974); *People v. Wisch,* 58 Misc. 2d 766, 296 N.Y.S.2d 882 (1969). *See generally* Annot., *What Constitutes "Property" Obtained Within Extortion Statute,* 67 A.L.R.3d 1021 (1975); *Colby v. McLaughlin,* 50 Wn.2d 152, 310 P.2d 527 (1957). The unchallenged findings of fact establish that the victim was engaged in a competitive market which shared customers and from which he derived income. The record reflects that beyond a reasonable doubt defendant attempted to obtain property from the victim by means of extortion.

■ Finally, Taylor alleges he received ineffective assistance of counsel, contending counsel should have objected to the midtrial 3.5 hearing. As discussed above, we find no merit to this allegation. Our review of the entire record indicates that defendant received effective representation and a fair and impartial trial. *State v. Johnson,* 92 Wn.2d 671, 600 P.2d 1249 (1979).

Accordingly, we affirm.

REED, C.J., and PEARSON, J., concur.

Reconsideration denied September 4, 1981.

Review denied by Supreme Court November 6, 1981.