[No. 15312-2-II.   Division Two.   February 23, 1994.]

THE STATE OF WASHINGTON, *Respondent*, v. HILARY IRVING THOMPSON, *Appellant*.

*Brian P. Coughenour*, for appellant (appointed counsel for appeal).

*David Bruneau, Prosecuting Attorney*, and *Stephen P. Traylor, Deputy*, for respondent.

ALEXANDER, J. — Hilary Irving Thompson appeals his conviction on a charge of third degree assault. He contends

that the trial court erred in permitting the State to cross-examine him about an out-of-court statement he gave to a Port Angeles police officer that was contradictory to his in-court testimony. Thompson asserts, additionally, that the trial court erred in conducting a CrR 3.5 hearing to determine the admissibility of the statement during his case in chief, and in concluding that it was admissible. We affirm.

On May 7, 1991, Hilary Thompson boarded a Clallam Transit bus in downtown Port Angeles. Soon after Thompson boarded the bus, he began to argue with Raymond Smith, another passenger. The bus driver, Albert Brown, observing the rear of the bus through his rearview mirror, saw Thompson standing with his foot on Smith's chest. Brown stopped the bus and proceeded to the rear in order to break up what he thought was a fight. Brown then told Thompson to leave the bus. As Thompson moved toward the front of the bus, he leaned into Brown, striking him in the chest with his arm and shoulder. This contact caused Brown to fall down.

The following day, Police Officer Eric Zappey was on patrol in downtown Port Angeles. Zappey, who had been informed that Clallam Transit had lodged a complaint against Thompson, observed a man he thought might be Thompson. Because he was not certain of the man's identity,[1] Zappey made contact with him and asked for his name and address. Upon learning that the person was Hilary Thompson, Zappey said, "I need to talk to you about what happened on the bus yesterday." Thompson responded, "I don't need to talk to you, I wasn't on the bus." Zappey then arrested Thompson.

Thompson was charged in Clallam County Superior Court with third degree assault.[2] Thereafter, he filed an omnibus

---

[1]Zappey had a photograph of Thompson from a "mug file", but Thompson had apparently shortened his hair length since it was taken.

[2]A person is guilty of third degree assault if he or she: "[U]nder circumstances not amounting to assault in the first or second degree:

" . . . .

"(b) Assaults a person employed as a transit operator or driver by a public or private transit company while that person is operating or is in control of a vehicle that is owned or operated by the transit company and that is occupied by one or more passengers". RCW 9A.36.031(1)(b).

application in which he requested a CrR 3.5 hearing. At the omnibus hearing, held pursuant to CrR 4.5, the elected prosecuting attorney, addressing Thompson's request for a CrR 3.5 hearing, stated: "[W]e're not offering any statements of the accused. There is no interrogation of the defendant, so we don't need a [CrR] 3.5 Hearing." Thompson's counsel informed the trial court about the statement Thompson made to Officer Zappey, but the prosecuting attorney reiterated, "I am not going to offer those, Your Honor". The defense then withdrew its request for a CrR 3.5 hearing.

During a pretrial conference on June 26, 1991, a deputy prosecuting attorney broached the issue of a CrR 3.5 hearing in an apparent effort to clarify the elected prosecutor's comments at the omnibus hearing. She stated, "I certainly do not intend to offer those [Thompson's statement to Zappey] in my case in chief". She went on to say, however, *"[i]f the defendant testifies, that might change"*. (Italics ours.)

At the trial, which commenced immediately after the pretrial conference, Brown and several bus passengers testified for the State and described Thompson's conduct on the bus. Thompson testified in his own defense and admitted being on the bus on May 7. However, he denied having bumped into Brown intentionally.

During its cross examination of Thompson, presumably in an attempt to impeach his credibility, the State questioned Thompson about the statement he gave to Officer Zappey on the day following the incident on the bus. Thompson's counsel objected, contending, among other things, that the State had agreed "that this whole area of questioning was not even going to be gotten into". The trial court then excused the jury and conducted a CrR 3.5 hearing to determine if Thompson's statement to Zappey was admissible. At the conclusion of that hearing, the trial court made oral findings of fact and concluded that Thompson's statement was admissible. It reached this determination despite noting Zappey's failure to give Thompson any *Miranda*[3] warnings before questioning him. It

---

[3]*Miranda v. Arizona*, 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602, 10 A.L.R.3d 974 (1966).

reasoned that Thompson's statement was not made during a custodial interrogation and was voluntarily given.

Thompson was found guilty of third degree assault. He then appealed. While the appeal was pending in this court, the trial court entered written findings of fact and conclusions of law relating to the admissibility of the statement Thompson made to Officer Zappey.

# I
## WAIVER

Thompson claims on appeal that the State waived its right to cross-examine him about the out-of-court statement he made to Officer Zappey. He asserts that the waiver occurred when the prosecuting attorney said: "[W]e're not offering any statements of the accused". The State responds that it was only waiving its right to seek to introduce the statement during its case in chief, but was not waiving its right to cross-examine Thompson about his statement in an effort to impeach his credibility. We agree with the State.

CrR 3.5 provides in part:

(a) **Requirement for and Time of Hearing.** When a statement of the accused is to be offered in evidence, the judge at the time of the omnibus hearing shall hold or set the time for a hearing, if not previously held, for the purpose of determining whether the statement is admissible. . . .

. . . .

(c) **Duty of Court To Make a Record.** After the hearing, the court shall set forth in writing: (1) the undisputed facts; (2) the disputed facts; (3) conclusions as to the disputed facts; and (4) conclusion as to whether the statement is admissible and the reasons therefor.

Omnibus hearings are governed by CrR 4.5, which provides in part as follows:

(d) **Motions.** All motions and other requests prior to trial should ordinarily be reserved for and presented orally at the omnibus hearing unless the court otherwise directs. *Failure to raise or give notice at the hearing of any error or issue of which the party concerned has knowledge may constitute waiver of such error or issue.* Checklist forms substantially like the memorandum required by section (h) shall be made available by the court and utilized at the hearing to ensure that all requests, errors and issues are then considered.

. . . .

(g) **Stipulations.** Stipulations by any party shall be binding upon that party at trial unless set aside or modified by the court in the interests of justice.

(Italics ours.)

■ CrR 4.5 provides that the State may be held to have waived its right to raise a particular issue at trial. Waiver is generally defined as "to relinquish voluntarily" a specific right. *Shoreline Comm'ty College Dist. 7 v. Employment Sec. Dep't*, 120 Wn.2d 394, 403, 842 P.2d 938 (1992) (quoting *Webster's Third New International Dictionary* 2570 (1986)). Waiver can be accomplished in two ways. First, under CrR 4.5(d), the State's right to raise an issue at trial may be waived by the State's failure to apprise the other party of it at the omnibus hearing. Second, under CrR 4.5(g), the State might affirmatively stipulate that it will, at trial, seek or decline to introduce certain evidence or review certain issues. According to the rule, the State is bound by that stipulation unless modified or set aside by the court in the "interests of justice".

■ The real question here is whether there was a waiver by stipulation. We conclude that there was no express assertion, at the omnibus hearing or at any other time, that the State would not try to introduce Thompson's statement to Officer Zappey for impeachment purposes if Thompson took the stand and gave testimony inconsistent with the statement he made to Zappey. While the statement of the prosecuting attorney might be viewed as being ambiguous as to whether the State was waiving its right to use Thompson's statement for impeachment purposes, any ambiguity was clarified when, at a pretrial conference, the deputy prosecuting attorney said that the State reserved the right to bring Thompson's statement out if Thompson elected to take the stand. This clarification occurred in advance of trial, thus affording Thompson the opportunity to move, in limine, to preclude the State from bringing this statement out through questioning in cross examination. Thompson made no such motion.

## II
### MIDTRIAL CrR 3.5 HEARING

Thompson contends, further, that holding a CrR 3.5 hearing to determine the admissibility of his statement to Zappey, during Thompson's case in chief, "substantially prejudiced the defendant" and was reversible error. The issue, thus, is whether a CrR 3.5 hearing can be held during trial.

This court has previously determined that a CrR 3.5 hearing held during the middle of a trial does not violate a defendant's due process right to a fair trial. *State v. Taylor*, 30 Wn. App. 89, 92-93, 632 P.2d 892, *review denied*, 96 Wn.2d 1012 (1981). We observed then that "[p]retrial hearings are but mechanical devices designed to effectuate substantive rights and remedies". *Taylor*, at 93. Although a midtrial hearing does not "precisely conform to the bifurcated procedure contemplated by the rules, CrR 3.5, 4.5" it does not amount to a denial of due process absent "a showing of prejudice". *Taylor*, at 92-93.

There is, in short, no requirement in CrR 4.5 or in any case law that a CrR 3.5 hearing be held pretrial.[4] From a practical standpoint, it is a more efficient use of court's and counsel's time to conduct a CrR 3.5 hearing during the trial when the indications are, as they were here, that the defendant's statement will be offered only for impeachment purposes in the event the defendant takes the witness stand and gives testimony contrary to an out-of-court statement.[5] In such

---

[4]This conclusion finds support in other cases. *See State v. Smith*, 74 Wn.2d 744, 750, 446 P.2d 571 (1968) (court noted no objection to trial court's decision that it would only rule on voluntariness of a statement if and when the State sought to use defendant's statements for impeachment, *vacated in part*, 408 U.S. 934, 33 L. Ed. 2d 747, 92 S. Ct. 2852 (1972), *overruled on other grounds in State v. Gosby*, 85 Wn.2d 758, 539 P.2d 680 (1975); *State v. McClung*, 66 Wn.2d 654, 658, 404 P.2d 460 (1965) (court noted no objection when trial court conducted midtrial hearing to determine voluntariness after State sought to cross examine defendant with a statement he made to police), *cert. denied*, 384 U.S. 1013 (1966); *State v. Joseph*, 10 Wn. App. 827, 829-31, 520 P.2d 635 (court remanded case for posttrial hearing to determine voluntariness), *review denied*, 84 Wn.2d 1006 (1974).

[5]Although CrR 3.5 does provide for a hearing at the time of, or that a hearing date be set at, the omnibus hearing, the rule refers to statements being "offered in evidence", not statements used for impeachment purposes.

circumstances, there is no reason to conduct the hearing before trial because the State and the court do not then know if the defendant will testify or, if he or she does, whether the testimony will be inconsistent with a prior out-of-court statement. If the defendant needs to know if the prosecutor will seek to use his statement at trial, in order to evaluate whether or not to testify at trial, the defendant can, as we have noted, raise the issue by a motion in limine.[6]

Additionally, we find no prejudice to Thompson from the trial court's holding the CrR 3.5 hearing during the defense case in chief. Thompson was able to raise all relevant issues regarding the admissibility of his statement outside the presence of the jury.

Thompson relies on *State v. Koloske*, 34 Wn. App. 882, 667 P.2d 635 (1982), *petition dismissed*, 100 Wn.2d 889, 676 P.2d 456 (1984), a Division One case in which the issue was whether a hearing to determine if the State could introduce a prior conviction under ER 609 must be held pretrial. Division One concluded that a pretrial omnibus hearing was the appropriate time to hold such a hearing. *Koloske*, 34 Wn. App. at 887. However, upon reviewing a consolidated case, our Supreme Court expressly "disapprove[d]" of the conclusion that a pretrial omnibus hearing was the only appropriate forum for resolving ER 609 issues.[7] *State v. Koloske*, 100 Wn.2d 889, 895 n.3, 676 P.2d 456 (1984), *overruled on other grounds in State v. Brown*, 113 Wn.2d 520, 782 P.2d 1013, 787 P.2d 906, 80 A.L.R.4th 989 (1989). The Supreme Court noted there that the trial court had discretion to hold an ER 609 hearing at the time of the omnibus hearing, at a

---

[6]This situation differs from a case where the State represents that it will not offer defendant's statements in its case in chief or for impeachment. There, if the State changes its position after the defendant takes the stand, it may be error to let the State introduce the evidence because of the potential prejudice to the defendant.

[7]Although the petition for review in *State v. Koloske*, 34 Wn. App. 882, 667 P.2d 635 (1982) was dismissed by the Supreme Court, *Koloske*, 100 Wn.2d at 892, the court rejected some of the conclusions of Division One in a case that had been consolidated with *Koloske, State v. Austin*, 34 Wn. App. 625, 662 P.2d 872 (1983). *Koloske*, 100 Wn.2d at 895 n.3.

separate pretrial hearing, or even during trial. *Koloske*, 100 Wn.2d at 896; *see also State v. Porter*, 36 Wn. App. 451, 453, 674 P.2d 694 ("courts have not yet imposed a requirement that a trial judge make a definitive ruling [on the admissibility of prior convictions] before the defendant takes the witness stand"), *review denied*, 101 Wn.2d 1015 (1984).

Thompson also asserts that the trial court failed to comply with CrR 3.5(c), which requires entry of written findings of fact and conclusions of law. Although a trial court's failure to make written findings and conclusions after a CrR 3.5 hearing is error, it is harmless as long as oral findings are sufficient to allow appellate review. *State v. Riley*, 69 Wn. App. 349, 352-53, 848 P.2d 1288 (1993); *State v. Clark*, 46 Wn. App. 856, 859, 732 P.2d 1029, *review denied*, 108 Wn.2d 1014 (1987). In *State v. Haynes*, 16 Wn. App. 778, 788, 559 P.2d 583, *review denied*, 88 Wn.2d 1017 (1977), we determined that the absence of written findings was not grounds for reversal absent prejudice. Here, because the trial court gave detailed oral findings, there was no prejudice. Furthermore, the trial court entered written findings during the appeal process. Thompson has not explained to us how he was prejudiced by the late entry of those findings.

## III

### Admissibility of Statement

Finally, Thompson contends that his statement to Officer Zappey should have been suppressed because it was made while he was subjected to custodial interrogation without the benefit of prior *Miranda* warnings. Before police officers may subject a suspect to custodial interrogation, they must inform the suspect of certain Fifth Amendment rights, including the right to an attorney and the right to remain silent. *Miranda*, 384 U.S. at 444-45, 467-70; *State v. Stewart*, 113 Wn.2d 462, 465, 780 P.2d 844 (1989), *cert. denied*, 494 U.S. 1020 (1990). Absent *Miranda* warnings, statements or confessions made by a suspect during cus-

todial interrogation are excluded from trial. *Stewart*, 113 Wn.2d at 465-66.

■ Even if we assume that the questioning of Thompson was an in custodial interrogation, his statement is admissible here if it was given voluntarily. That is so because his statement was brought in to the case only for impeachment purposes. The State may use statements obtained in violation of *Miranda* for impeachment purposes. *Harris v. New York*, 401 U.S. 222, 225-26, 28 L. Ed. 2d 1, 91 S. Ct. 643 (1971); *State v. Hubbard*, 103 Wn.2d 570, 575, 693 P.2d 718 (1985); *Riddell v. Rhay*, 79 Wn.2d 248, 252-53, 484 P.2d 907, *cert. denied*, 404 U.S. 974 (1971).

A statement obtained in violation of *Miranda* and used for impeachment purposes must, however, have been made free of coercion and must satisfy constitutional due process standards of voluntariness. *Brown*, 113 Wn.2d at 556; *State v. Davis*, 82 Wn.2d 790, 793, 514 P.2d 149 (1973). The test for voluntariness is whether "the confession [is] the product of an essentially free and unconstrained choice by its maker". *Schneckloth v. Bustamonte*, 412 U.S. 218, 225, 36 L. Ed. 2d 854, 93 S. Ct. 2041 (1973) (quoting *Culombe v. Connecticut*, 367 U.S. 568, 602, 6 L. Ed. 2d 1037, 81 S. Ct. 1860 (1961)). We examine the totality of the circumstances in determining voluntariness, including the presence of threats or violence, direct or implied promises, or the use of improper influence or police trickery. *Schneckloth*, 412 U.S. at 227; *State v. Davis*, 34 Wn. App. 546, 550, 662 P.2d 78, *review denied*, 100 Wn.2d 1005 (1983).

The trial court did not err in determining that Thompson's statement was voluntary and, therefore, admissible for impeachment purposes. There was no evidence presented by Thompson that force or coercion was used by Officer Zappey. No explicit or implicit threats were made, nor was psychological pressure, deceit, or police trickery employed. Indeed, there is no claim by Thompson that he was deprived of his free will or that his choice to answer Officer Zappey was constrained in any way.

132

Affirmed.

MORGAN, C.J., and SEINFELD, J., concur.