IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 35380-0-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| DAVID DAMON MCCONVILLE, | ) | |
| | ) | |
| Appellant. | ) | |

LAWRENCE-BERREY, C.J. — David D. McConville appeals after his convictions

for fourth degree assault and bail jumping. He argues the trial court erred when it found

that the State had not waived its right to use his custodial statements and when it denied

his motion to exclude those statements due to the State's failure to timely disclose them.

He also requests that we remand for two reasons: first, to correct a scrivener's error in the

judgment and sentence; and, second, to strike two court costs pursuant to *State v.*

*Ramirez*, 191 Wn.2d 732, 426 P.3d 714 (2018). We affirm Mr. McConville's

convictions, but remand for the trial court to correct the scrivener's error and to strike the

two court costs.

No. 35380-0-III
*State v. McConville*

FACTS

*Background*

Devin Delatorre, his mother, and his girlfriend lived with Steve Neal. The home

occupants used methamphetamine daily. In May 2016, David McConville visited the

home and gave Delatorre $40. Several days later, Mr. McConville went to Neal's house

to confront Delatorre. The details of this confrontation were disputed at trial.

A couple days later, Mr. McConville was arrested and advised of his *Miranda*[1]

rights. The arresting deputy placed Mr. McConville in his patrol car and activated its

video camera and microphone. Mr. McConville said he barely knew Delatorre, that

Delatorre did not owe him money, and that he had been staying with a woman friend in

Goldendale at the time of the incident.

*Procedure*

On May 16, 2016, the State charged Mr. McConville with first degree burglary.

Mr. McConville later failed to show for a court hearing, and the State amended the charge

to add one count of bail jumping.

On June 20, 2016, the trial court held an omnibus hearing. The State filed a notice

of intent to offer Mr. McConville's custodial statements and requested a CrR 3.5 hearing

---

[1] *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

2

to determine their admissibility. Mr. McConville similarly requested a CrR 3.5 hearing. The parties signed a joint stipulation to hold the hearing. Also during the omnibus hearing, Mr. McConville requested a copy of the video of his arrest and transportation. The State responded, "I'll look into it." Report of Proceedings (RP) at 6.

On July 18, 2016, at the next hearing, the State opened by saying, "There's a 3.5 hearing that's scheduled—stricken—We don't . . . . So we're just here for status." RP at 9. It is not clear who struck the hearing or why it was struck.

On October 17, 2016, at another status hearing, the court questioned the parties about a CrR 3.5 hearing. Mr. McConville's new attorney stated he was unsure if the State was asking for a CrR 3.5 hearing. The State responded, "I didn't—I don't believe . . . . There was no—no custodial statements were made, your Honor." RP at 16.

*Trial*

Trial began on May 3, 2017. The State presented its case and rested. The defense called Mr. McConville to testify. Mr. McConville testified that he had gone to Neal's house on May 12 and that he had argued with Delatorre but did not assault him. Mr. McConville further testified that Delatorre left the house, that he chased Delatorre, but that he never came close to catching Delatorre.

3

Prior to cross-examination, the State requested a CrR 3.5 hearing to determine the admissibility of Mr. McConville's post-*Miranda* statements. The State wished to use those inconsistent statements to impeach Mr. McConville's trial testimony.

Mr. McConville objected to the mid-trial CrR 3.5 hearing. The trial court nevertheless excused the jury and held a CrR 3.5 hearing.

*CrR 3.5 Hearing*

The State called the arresting deputy. He testified consistent with his report that was provided to Mr. McConville in discovery. Mr. McConville cross-examined the deputy and emphasized that his custodial statements were video recorded and that he had not received the video. The trial court ruled that Mr. McConville's custodial statements were admissible. It found that the deputy had properly advised Mr. McConville of his *Miranda* rights and that Mr. McConville made a knowing, voluntary, and intelligent waiver of those rights.

After the hearing, the State said it did not know if it had provided the police video to Mr. McConville and it would have to check its records. The trial court instructed the State to check its records and, if it had not provided the video, to promptly provide it to Mr. McConville. The court recessed early to give Mr. McConville a chance to review the video.

The following day, Mr. McConville moved to dismiss the case. He asserted that the State had not disclosed the police video until May 3, 2017, at 6:00 p.m. and argued that this discovery violation warranted dismissal. Mr. McConville conceded the video was consistent with his statements in the police report. Ultimately, the trial court denied Mr. McConville's motion to dismiss. The court noted it had recessed early the day before so Mr. McConville could review the video and that the video corroborated statements earlier produced by the State to Mr. McConville.

Next, Mr. McConville argued that the State had waived its right to use his statements by not having a pretrial CrR 3.5 hearing. The trial court disagreed and relied on *State v. Thompson*, 73 Wn. App. 122, 867 P.2d 691 (1994). The trial court found that the State did not expressly assert it was not going to use the statements nor had it expressly waived its right to use those statements.

The trial court allowed Mr. McConville to reopen his direct and to remove the sting of his inconsistent statements by explaining to the jury why he had lied to the deputy. Mr. McConville testified that he had lied to the deputy about not being at Neal's house because he did not want to be arrested for a drug offense. The State cross-examined Mr. McConville and minimally questioned him on the already explained

5

inconsistent statements. The State did not offer the police video into evidence. The

parties rested and gave closing arguments.

*Verdict and Sentencing*

The jury found Mr. McConville guilty of bail jumping. It also found Mr.

McConville not guilty of first degree burglary, but it did find Mr. McConville guilty of

the lesser offense of fourth degree assault.

At sentencing, the trial court imposed 84 months on the bail jumping conviction

and 364 days on the fourth degree assault conviction. The court ordered concurrent

sentences on both convictions. However, paragraph 4.1(a) of the judgment and sentence

omitted the total months of confinement. In addition, the trial court imposed a $200

criminal filing fee and a $100 deoxyribonucleic acid (DNA) collection fee.

Mr. McConville appealed.

## ANALYSIS

A.   THE STATE DID NOT WAIVE ITS RIGHT TO USE MR. MCCONVILLE'S
CUSTODIAL STATEMENTS

Mr. McConville argues the trial court erred when it found that the State did not

waive its right to use his custodial statements. We disagree.

CrR 4.5 provides that the State may be held to have waived its right to certain issues at trial in two ways. First, the State's failure to apprise the other party of an issue at the omnibus hearing may result in waiver. CrR 4.5(d). Second, if the State affirmatively stipulates that it will, at trial, seek to introduce or decline to introduce, evidence or issues, the State generally will be bound by its stipulation. CrR 4.5(g).

A "stipulation" is defined as "[a] voluntary agreement between opposing parties concerning some relevant point." BLACK'S LAW DICTIONARY 1641 (10th ed. 2014). Both parties rely on *Thompson*, 73 Wn. App. 122, as precedent.

*State v. Thompson*

In *Thompson*, Hilary Irving Thompson reportedly assaulted a transit bus driver. *Id.* at 124. The day after the incident, Officer Eric Zappey saw a person he thought was Thompson. *Id.* He asked for the person's name and identification. *Id.* After learning the person was Thompson, Officer Zappey said, "'I need to talk to you about what happened on the bus yesterday.'" *Id.* Thompson responded, "'I don't need to talk to you, I wasn't on the bus.'" *Id.* The officer then arrested Thompson. *Id.*

The State charged Thompson with third degree assault. *Id.* At the omnibus hearing, the elected prosecuting attorney stated, "'[W]e're not offering any statements of the accused. There is no interrogation of the defendant, so we don't need a [CrR] 3.5

Hearing.'" *Id.* at 125 (alterations in original). The defendant's attorney informed the trial court about the defendant's initial statement to the arresting officer, but the prosecuting attorney reiterated, "'I am not going to offer those, Your Honor.'" *Id.* The defendant then withdrew his request for a CrR 3.5 hearing. *Id.*

During a pretrial conference, a deputy prosecuting attorney walked back her boss's earlier comments. *Id.* She said she did not intend to offer Thompson's statement to Officer Zappey, but if Thompson testified, "'*that might change*.'" *Id.*

At trial, Thompson testified and admitted he was on the bus. *Id.* During cross-examination, the State attempted to impeach Thompson by using the inconsistent statement. *Id.* The trial court conducted a midtrial CrR 3.5 hearing and found the statements were not custodial and were, therefore, admissible. *Id.*

On appeal, Division Two of the Court of Appeals held that the State had not waived its right to use Thompson's statement. *Id.* at 126. The *Thompson* court focused its analysis on whether there was a waiver by stipulation. *Id.* at 127. It reasoned:

> While the statement of the [elected] prosecuting attorney might be viewed as being ambiguous as to whether the State was waiving its right to use Thompson's statement for impeachment purposes, any ambiguity was clarified when, at a pretrial conference, the deputy prosecuting attorney said that the State reserved the right to bring Thompson's statement out if Thompson elected to take the stand.

*Id.* The *Thompson* court concluded that "there was no express assertion, at the omnibus hearing or at any other time, that the State would not try to introduce Thompson's statement to Officer Zappey for impeachment purposes if Thompson took the stand and gave testimony inconsistent with the statement he made to Zappey." *Id.* Division Two emphasized that the clarification occurred sufficiently before trial that Thompson had an opportunity to request that his statement be excluded. *Id.*

   *Application of State v. Thompson*

   Mr. McConville argues that *Thompson* is distinguishable because the State made no clarification or reservation that it intended to use his statements if he testified. Although *Thompson* is distinguishable on this point, Mr. McConville has failed to convince us that the State stipulated that it would not use his statements.

   Here, the State never assured Mr. McConville that it would not use his custodial statements. More particularly, the State made no stipulation. Instead, at the final status hearing, the deputy prosecutor said he did not believe Mr. McConville made any custodial statements. The deputy prosecutor's statement was factually incorrect, and Mr. McConville knew this. Mr. McConville knew from the police report that there were custodial statements, what those statements were, and that those statements were video recorded. He had even requested a CrR 3.5 hearing and for the State to produce the video

9

recording. Mr. McConville could have corrected the deputy prosecutor and requested a CrR 3.5 hearing. Instead, Mr. McConville remained silent and opted not to pursue his earlier filed CrR 3.5 motion.

B.    WE GENERALLY WILL NOT REVIEW A CLAIM OF ERROR FIRST RAISED ON APPEAL

Mr. McConville argues the trial court erred by not suppressing the police video. We decline to review this claim of error.

An appellate court generally will refuse to review a claim of error first raised on appeal. RAP 2.5(a). Mr. McConville did not ask the trial court to suppress the police video. Instead, he asked the trial court to dismiss the State's case. We nevertheless note that the police video was not admitted at trial.

C.    REMAND TO CORRECT SCRIVENER'S ERROR

Mr. McConville requests that we remand with directions for the trial court to complete paragraph 4.1(a) of the judgment and sentence to reflect that total confinement is 84 months. The State responds that Department of Corrections can easily determine that total confinement is 84 months by examining the judgment and sentence.

We generally agree with the State. We would not remand for the trial court to complete paragraph 4.1(a) of the judgment and sentence but for the fact that remand is required to strike two legal financial obligations (LFOs).

D. REMAND TO STRIKE CRIMINAL FILING FEE COST AND DNA COLLECTION FEE

Citing *State v. Ramirez*, Mr. McConville asks that we direct the trial court to strike two LFOs—the DNA collection fee and the criminal filing fee.

*Criminal Filing Fee*

House Bill 1783, which became effective June 7, 2018, prohibits trial courts from imposing discretionary LFOs on defendants who are indigent at the time of sentencing. LAWS OF 2018, ch. 269, § 6(3); *Ramirez*, 191 Wn.2d at 746. This change to the criminal filing fee statute is now codified in RCW 36.18.020(2)(h). As held in *Ramirez*, these changes to the criminal filing fee statute apply prospectively to cases pending on direct appeal prior to June 7, 2018. *Ramirez*, 191 Wn.2d at 747. Accordingly, the change in law applies to Mr. McConville's case. Because Mr. McConville is indigent, the criminal file fee must be struck pursuant to *Ramirez*.

*DNA Collection Fee*

The change in law also prohibits imposition of the DNA collection fee when the State has previously collected the offender's DNA as a result of a prior conviction. LAWS OF 2018, ch. 269, § 18.

11

The uncontested record establishes this fact. Mr. McConville has five Washington State felonies since 1990. Since that time, Washington law has required defendants with a felony conviction to provide a DNA sample. LAWS OF 1989, ch. 350, § 4; RCW 43.43.754. Given the uncontested record, we presume that a DNA sample has been collected from Mr. McConville prior to the current judgment and sentence. We therefore direct the trial court to also strike the DNA collection fee.

E. STATEMENT OF ADDITIONAL GROUNDS FOR REVIEW (SAG)

In his SAG, Mr. McConville argues his second attorney was improperly fired by the trial court for saying Mr. McConville could not get a fair trial. Mr. McConville also argues the State conspired to put him in jail to protect Delatorre, a purported police informant.

Mr. McConville's claims rest on purported facts outside the record. When claims depend on evidence outside the record, those claims are properly raised through a personal restraint petition. *State v. McFarland*, 127 Wn.2d 322, 335, 899 P.2d 1251 (1995).

No. 35380-0-III
*State v. McConville*

Affirmed but remanded.

A majority of the panel has determined this opinion will not be printed in the

Washington Appellate Reports, but it will be filed for public record pursuant to

RCW 2.06.040.

_____
Lawrence-Berrey, C.J.

I CONCUR:

_____
Siddoway, J.

13

No. 35380-0-III

FEARING, J. (concurring) — I concur in the majority's decision on the basis that

David McConville sought dismissal of the charge of first degree burglary rather than

suppression of the video and the State never played the video to the jury.

_____
Fearing, J.