IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 37725-3-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| LEVI A. FOGLEMAN, | ) | |
| | ) | |
| Appellant. | ) | |

PENNELL, C.J. — Levi Fogleman appeals his convictions for possession,
distribution, and possession with intent to distribute controlled substances. We reverse
Mr. Fogleman's conviction for simple possession of a controlled substance and remand
for resentencing and for correction of scrivener's errors. We otherwise affirm.

FACTS

In the fall of 2019, law enforcement obtained a warrant to search Levi Fogleman's
home. Probable cause was based on several undercover drug sales. Upon executing the
warrant, a detective saw Mr. Fogleman throw a plastic baggie out of the back door of his
residence. The baggie was later determined to contain 103 grams of methamphetamine.

No. 37725-3-III
*State v. Fogleman*

Mr. Fogleman was arrested inside his home along with three other individuals. All the occupants were read their *Miranda*[1] rights. Upon subsequent questioning, Mr. Fogleman admitted to throwing the bag of methamphetamine out of his back door. A search of Mr. Fogleman's home uncovered heroin, hydrocodone pills, and other indicia of distribution, such as a scale and packaging materials.

The State charged Mr. Fogleman with one count of possession of a controlled substance (methamphetamine) with intent to distribute, one count of possession of a controlled substance (heroin), one count of possession of a controlled substance (hydrocodone) with intent to distribute, and three counts of delivery of a controlled substance (methamphetamine).

The case proceeded to a jury trial on July 23, 2020. Several months earlier, Washington's governor had declared a state of emergency due to the COVID-19 pandemic. The Washington State Supreme Court subsequently issued an order approving jury trials in noncourthouse locations to facilitate social distancing. The Supreme Court subsequently approved Asotin County Superior Court's choice of the "Asotin County Fire District Building in Clarkston" (the Fire Hall) as an appropriate trial venue. Clerk's Papers at 42-43. The county had purchased the building from a church in June 2014.

---

[1] *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

2

The church thereafter paid rent to the county so that it could continue to use the building for office space and Sunday gatherings. The county had utilized the building for fire district training, town hall meetings, an emergency evacuation center, and also made it available for rent to the community for other events. At the time of Mr. Fogleman's trial, the court had removed most religious imagery from the Fire Hall. A church office sign, a shallow bas relief sculpture of a four-pointed star appearing to be set above eye level, and triangular stage decorations remained in the Fire Hall.

At trial, immediately after the jury was empaneled, defense counsel raised an objection to the Fire Hall location.[2] Counsel argued the nature of the Fire Hall could improperly influence the jurors, raising issues regarding the separation of church and state. Defense counsel noted that while the only obvious religious imagery was a "Church Office" sign, the Fire Hall nevertheless "[felt] like a church, [and] it look[ed] like a church . . . ." Report of Proceedings (RP) (Jul. 23, 2020) at 179.

The court overruled the objection. The court explained it had been involved in venue selection and concluded the Fire Hall was the best option in terms of spacing, acoustics, and air conditioning. Furthermore, the court noted it neither saw any indication the Fire Hall was used as a church nor any religious symbols or imagery that might have

---

[2] The objection was voiced outside the presence of the jury.

influenced the jury. Nevertheless, the court offered to cover up the "church office" sign. *Id*. at 182.

The court also held a brief CrR 3.5 hearing to determine the admissibility of Mr. Fogleman's post-arrest statements. The State elicited testimony from the arresting detective who explained that after he seized Mr. Fogleman and the other occupants of the home, he read everyone their *Miranda* rights. The detective testified that no one had any questions about their rights and everyone was willing to waive their rights, including Mr. Fogleman. On cross-examination, Mr. Fogleman's attorney asked four questions aimed at clarifying the detective's testimony. Defense counsel did not present any argument against the admissibility of Mr. Fogleman's statements. Instead, counsel commented he was "really not all that concerned about the statements." *Id*. at 192.

At the conclusion of the CrR 3.5 hearing, the court found

based on the testimony that was presented here, it does appear to me that at the time that the warrant was executed on the 23rd of October, [Mr. Fogleman] then, with three other individuals, were present. The Detective testified to an extent where the Court feels he must have felt that they were in custody at the time, under arrest. *Miranda* warnings were provided, not individually but to the group.

[Mr. Fogleman] in particular acknowledged that he understood those rights and agreed to answer questions, did answer questions, and it's the Court's conclusion here that the Miranda obligation was honored here and that [Mr. Fogleman] understood what his rights were and knowingly, voluntarily, and intelligently waived the rights and made the statements that were testified to.

*Id*. No written findings of fact or conclusions of law were entered by the trial court

following the CrR 3.5 hearing.

The jury convicted Mr. Fogleman as charged. The court sentenced Mr. Fogleman

to 144 months in prison and 12 months of community custody. Mr. Fogleman timely

appeals.

## ANALYSIS

*Assistance of counsel*

Mr. Fogleman contends he was deprived of his constitutional right to effective

assistance of counsel because his attorney did not adequately address the religious

imagery on display in the Fire Hall. Mr. Fogleman claims trial counsel should have taken

further steps to conceal or remove religious symbols from the Fire Hall. He also argues

his trial counsel should have proposed a limiting instruction to blunt the impact of the

trial taking place at a religious site.

To establish a claim of ineffective assistance of counsel, a defendant must prove

both (1) deficient performance and (2) prejudice. *Strickland v. Washington,* 466 U.S. 668,

687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). Failure to establish either prong precludes

relief from conviction. *State v. Hendrickson*, 129 Wn.2d 61, 78, 917 P.2d 563 (1996).

Here, Mr. Fogleman fails on the first prong, requiring him to show deficient performance.

With respect to the religious imagery, Mr. Fogleman's attorney brought the issue to the trial court's attention through an objection to the Fire Hall venue. The court assessed the surroundings and determined the only nonsecular imagery was a sign on the building that read "church office." RP (Jul. 23, 2020) at 182. The court overruled the objection and indicated that it would "hide" the sign and anything suggesting the building was being used as a church. *Id*. Given the trial court's assessment of the Fire Hall venue, it is not clear what more defense counsel could have done with respect to any perceived religious imagery at the Fire Hall. Counsel was not deficient in this regard.

As for the lack of a curative instruction, we agree with the State that counsel's actions were reasonably strategic. *See State v. McFarland*, 127 Wn.2d 322, 336, 899 P.2d 1251 (1995) (no deficient performance if defense counsel's decision was arguably strategic). Curative instructions are not always helpful, in that they can draw the jury's attention to potentially damaging information. *See State v. Humphries*, 181 Wn.2d 708, 720, 336 P.3d 1121 (2014) (no limiting instruction for defendant's stipulation to a prior offense); *State v. Barragan*, 102 Wn. App. 754, 762, 9 P.3d 942 (2000) (no limiting instruction for defendant's prior fights). Because curative instructions often function as double-edged swords, we generally defer to counsel's decision not to seek a curative instruction as tactical. *See, e.g.*, *Humphries*, 181 Wn.2d at 720; *State v. Yarbrough*,

6

151 Wn. App 66, 90-91, 210 P.3d 1029 (2009); *State v. Price,* 126 Wn. App. 617, 649, 109 P.3d 27 (2005), *abrogated on other grounds by State v. Hampton*, 184 Wn.2d 656, 665, 361 P.3d 734 (2015). Here, requesting a curative instruction would have amplified defense counsel's concern that the jurors may have noticed religious imagery at the Fire Hall. The decision not to seek a curative instruction was reasonably strategic.

*Conviction for simple possession*

As the parties agree, Mr. Fogleman's conviction for unlawful possession of heroin (Count 2) must be reversed in light of the Supreme Court's ruling in *State v. Blake*, 197 Wn.2d 170, 481 P.3d. 521 (2021). We reverse Mr. Fogleman's conviction for Count 2. Because the reversal for the conviction for Count 2 also impacts Mr. Fogleman's offender score, we also remand for resentencing.

*CrR 3.5 written findings of fact and conclusions of law*

Mr. Fogleman contends the trial court erred when it failed to enter written findings of fact and conclusions of law in violation of CrR 3.5(c). The State agrees the trial court erred by not making written findings, but contends the error was harmless and remand is unnecessary because the court's oral findings are sufficient to allow appellate review. We agree with the State.

CrR 3.5 establishes a pretrial process for assessing the admissibility of a defendant's statements at trial. The rule requires entry of written findings of fact and conclusions of law. CrR 3.5(c). Written findings and conclusions facilitate and expedite appellate review of the issues. *State v. Head,* 136 Wn.2d 619, 622-23, 964 P.2d 1187 (1998). However, the failure to enter written findings and conclusions does not necessarily require reversal. The lack of written findings and conclusions is harmless error if the trial court's oral findings are sufficient to allow appellate review. *State v. Thompson*, 73 Wn. App. 122, 130, 867 P.2d 691 (1994).

Here, the trial court's failure to enter written findings and conclusions was harmless. None of the facts surrounding Mr. Fogleman's post-arrest statements were contested at the time of the CrR 3.5 hearing. For the first time on appeal, Mr. Fogleman suggests the detective's *Miranda* warning may have been inaccurate or incomplete. This unpreserved argument is not well taken. *See* RAP 2.5(a). While it would have been better practice for the State to clarify the contents of the detective's *Miranda* warning, either by entering the advice card into evidence or reciting its contents, these practices are not required. Under the circumstances here, the detective's testimony that Mr. Fogleman was read his *Miranda* rights and agreed to waive his rights without asking for

clarification was sufficient to justify the court's finding of a valid waiver. The record

does not support the need to remand for written findings.

*Scrivener's errors*

The parties agree that the dates listed on Counts 4 and 5 of Mr. Fogleman's

judgment and sentence form are incorrect. This matter can be remedied on remand.

CONCLUSION

We reverse Mr. Fogleman's conviction for Count 2, possession of a controlled

substance (heroin), and remand for resentencing and for correction of scrivener's errors.

We otherwise affirm the remaining convictions.

A majority of the panel has determined this opinion will not be printed in

the Washington Appellate Reports, but it will be filed for public record pursuant to

RCW 2.06.040.

_____, C.J.
Pennell, C.J.

WE CONCUR:

_____, J.
Siddoway, J.

_____, J.
Staab, J.

9