## IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 57493-4-II |
| Respondent, | |
| v. | |
| ZACHARY DALE FINE, | UNPUBLISHED OPINION |
| Appellant. | |

LEE, J. — Zachary D. Fine appeals his conviction on one count of failure to register as a sex offender. Fine argues there was insufficient evidence supporting his conviction because the State failed to prove Fine established a "fixed residence" in Washington, as defined by RCW 9A.44.128(6).[1] Because the State was not required to prove Fine established a "fixed residence"

---

[1] Fine also challenges the trial court's failure to enter written findings of fact and conclusions of law pursuant to CrR 3.5 and 6.1(d). The trial court entered its written findings of fact and conclusions of law after Fine filed his opening brief on April 28, 2023. In that brief, Fine "reserve[d] the right" to challenge the trial court's written CrR 3.5 and 6.1(d) findings and conclusions for prejudice or tailoring, either in his reply brief or in a supplemental brief. Br. of Appellant at 18, 19. But Fine did not argue prejudice or tailoring in his reply brief, nor has he requested or filed supplemental briefing.

Although it was delayed, the trial court entered written findings and conclusions pursuant to CrR 3.5 and CrR 6.1(d) on August 31, 2023. Because the trial court has entered its written findings and conclusions, remand to the trial court for entry of written findings and conclusions is unnecessary. *See State v. Thompson*, 73 Wn. App. 122, 130, 867 P.2d 691 (1994) (rejecting appellant's argument that trial court's initial failure to enter written findings and conclusions pursuant to CrR 3.5 prejudiced him where "the trial court entered written findings during the appeal process" and appellant failed to "explain[] . . . how he was prejudiced by the late entry of those findings").

in Washington, but only that Fine established residency in the state generally, there was sufficient evidence for the trial court to find he was residing in Washington, had a duty to register as a sex offender, and failed to comply with any registration requirement. Thus, we affirm Fine's conviction.

FACTS

A.    BACKGROUND

Fine dated A.A. from 2018 until March 2022. On January 23, 2020, Fine pleaded guilty to a charge of disorderly conduct—domestic violence. As part of his sentence, the trial court entered a domestic violence no contact order (DVPO) prohibiting Fine from contacting A.A. or coming within 300 feet of A.A. or A.A.'s residence. In mid-2021, A.A. moved into an apartment in Carson, Washington and lived there throughout the period preceding Fine's arrest and trial. The DVPO was effective through January 23, 2022. The DVPO was not lifted prior to its expiration.

On December 1, 2021, A.A. called Skamania County police because A.A. did not want Fine to "be at or near [A.A.'s] house." 1 Verbatim Rep. of Proc. (VRP) at 112. Deputy Pedro Virgen responded and arrested Fine outside A.A.'s apartment for violating the DVPO.

Fine was subsequently charged by amended information with two counts of violating the DVPO, and one count of failure to register as a sex offender in Washington. The failure to register charge stemmed from Fine's 1993 conviction in Oregon on two felony sex offenses, which

---

Accordingly, we do not address Fine's initial assignments of error to the trial court's failure to enter written findings and conclusions.

RCW 9A.44.128 was amended in 2023. The amendments were not substantive and do not impact the analysis; therefore, we cite to the current statute.

2

imposed a lifetime registration requirement on Fine, including a requirement that Fine update his registration each time he changed addresses.

B.    TRIAL

Fine waived his right to a jury trial, and a one-day bench trial took place on September 23, 2022.  Fine's Oregon probation officer testified that Fine's felony sex convictions required him to update his registration any time he "changed addresses," that he was reminded of this requirement, and that he appeared to understand the requirement.  1 VRP at 79.

An evidence technician with the Oregon State Police testified that Fine updated his registration on November 8, 2021, listing an Oregon address, which Fine later testified was his mother's address.  The same technician testified that Fine would have been advised about the requirement that he update his registration if he moved.  One of the officers who responded to A.A.'s 911 call testified that Fine had never registered as a sex offender anywhere in the state of Washington.

A.A. testified regarding Fine's presence at A.A.'s apartment in Washington.  A.A. initially gave contradictory statements regarding how often Fine stayed at the apartment, ultimately testifying that, for the two months preceding his arrest, Fine spent "[e]very night" at the apartment. 1 VRP at 120.  A.A. explained the contradictions on cross-examination: "Now that I've gotten away from [Fine] and his abuse, yeah, I'm able to say that."  1 VRP at 120.  A.A. also testified that Fine kept his dog and clothes at the apartment.

The trial court also heard from Jason Deleon, A.A.'s landlord.  According to Deleon, Fine had been at A.A.'s apartment since at least November 4, 2021, but possibly as early as November 1, 2021, spending every night there.  Deleon observed Fine asleep in A.A.'s apartment at least

once. Deleon also provided surveillance footage from outside A.A.'s apartment, which was played for the court. The footage captured Fine outside A.A.'s apartment on four separate dates in November 2021. Finally, Deleon testified that Fine left "certificates and . . . documentation" on Deleon's porch "clearly indicating that [Fine]" planned to apply to live in the apartment complex. 1 VRP at 137.

The trial court also heard a recording of a phone call Fine made to his mother after being arrested. During the call, Fine stated A.A. "threw all [his] stuff outside," and implied he kept his dog, his car, his clothing, and his tablet at A.A.'s apartment. 1 VRP at 144. Fine said that A.A. would not let him "back in" to the apartment after calling the police. 1 VRP at 145. Fine also said, "All I did was sit up there and clean for [A.A.], comfort her." 1 VRP at 146. Fine's mother told him she had warned him to stay away from A.A., that A.A. wanted him "out of" the apartment, and that he should never have returned to A.A.'s apartment. 1 VRP at 145. Finally, she told Fine that if he was released on bail, he would have to go to a homeless shelter because she could not "put up with" him. 1 VRP at 148.

Fine testified in his own defense, denying that he lived at A.A.'s apartment. Rather, Fine explained, he was living with his mother and only stayed at A.A.'s whenever his mother needed a break and A.A. was at work. Fine also testified that he and A.A. initially "put in for joint custody" of the apartment. 1 VRP at 246. Finally, Fine testified that "90 percent" of the stuff in A.A.'s apartment was his. 1 VRP at 255.

The trial court found that Fine "was living at [A.A.]'s apartment in Carson, Skamania County, Washington between November 11, 2021 and December 1, 2021." Clerk's Paper's (CP) at 71. The trial court concluded that Fine was residing in Washington during the charging period

4

(November 11-December 1, 2021), had a duty to register as a sex offender, and failed to register as a sex offender. Accordingly, the trial court found Fine guilty of failure to register as a felony sex offender.

Fine appeals.

ANALYSIS

Fine argues there was insufficient evidence to convict him of the crime of failure to register as a sex offender because the State failed to prove Fine established a "'fixed residence'" in Washington. Br. of Appellant at 9. Specifically, Fine argues that the State had to prove he established a "fixed residence," as defined by RCW 9A.44.128(6), in Washington and that, "[a]s a matter of law," Fine could not have lawfully resided at A.A.'s residence because the DVPO "legally precluded [him] from coming within 300 feet of [A.A.]'s residence." Br. of Appellant at 13.[2] Because the State only needed to prove that Fine established residency in Washington, as opposed to a "fixed residence," and the State presented sufficient evidence establishing Fine resided in Washington, we disagree with Fine.

---

[2] In his reply brief, Fine makes a supplemental assignment of error to the trial court's finding that he was living in Washington. Fine's argument to support the supplemental assignment of error is the same argument raised in his opening brief—that, as a matter of law, he could not have established a "fixed residence" in Washington, because the DVPO made it impossible for him to be in A.A.'s apartment "lawfully."

As discussed below, the trial court's finding was supported by substantial evidence. Both A.A. and Deleon testified that, for the two months preceding his arrest, Fine spent every night at A.A.'s Washington apartment. Surveillance footage captured Fine outside A.A.'s apartment on four separate occasions. And Fine acknowledged spending time at A.A.'s apartment and testified that 90% of the things in A.A.'s apartment were his.

No. 57493-4-II

A.     LEGAL PRINCIPLES

In a sufficiency of the evidence challenge, we determine whether a rational trier of fact could find the elements of the crime beyond a reasonable doubt. *State v. Bergstrom*, 199 Wn.2d 23, 40-41, 502 P.3d 837 (2022). When a defendant claims insufficient evidence, "'the defendant necessarily admits the truth of the State's evidence.'" *Id.* (quoting *State v. Homan*, 181 Wn.2d 102, 106, 330 P.3d 182 (2014)). Also, the evidence and all reasonable inferences that can be drawn from the evidence are viewed in the light most favorable to the State. *Id.* at 40-41. We do not make credibility determinations; instead, we defer to the trier of fact on credibility determinations. *Id.* at 41.

"A person commits the crime of failure to register as a sex offender if the person has a duty to register under RCW 9A.44.130 for a felony sex offense and knowingly fails to comply with any of the requirements of RCW 9A.44.130." RCW 9A.44.132(1). RCW 9A.44.130(1)(a) states: "Any adult residing *whether or not the person has a fixed residence* . . . in [Washington] who . . . has been convicted of any sex offense . . . shall register with the county sheriff for the county of the person's residence."[3] (Emphasis added.) Out-of-state offenders must register in Washington if "the person would be required to register as a sex offender while residing in the state of conviction." RCW 9A.44.128(12)(h).

---

[3] RCW 9A.44.130(1)(a) was amended in 2023. The amendments were not substantive and do not impact the analysis; therefore, we cite to the current statute.

B.      SUFFICIENT EVIDENCE SUPPORTS FINE'S CONVICTION

RCW 9A.44.130(1)(a) requires that "[a]ny adult residing *whether or not the person has a fixed residence* . . . in [Washington] who . . . has been convicted of any sex offense . . . shall register with the county sheriff for the county of the person's residence." (Emphasis added.) Out-of-state offenders must register in Washington if "the person would be required to register as a sex offender while residing in the state of conviction." RCW 9A.44.128(12)(h).

Contrary to Fine's argument, the plain language of the statute shows that the legislature did not intend for a sex offender who is required to register to do so only if they have a "fixed residence." Rather, RCW 9A.44.130(1)(a) imposes the duty to register on any adult who is residing in Washington and has been convicted of a sex offense, "whether or not the person has a fixed residence . . . in [Washington]." Thus, as relevant here, the plain language of the registration statute merely requires the sex offender to reside in Washington to trigger a duty to register.

"[I]t is well established that the term 'residence' as used in RCW 9A.44.130 means 'a place to which one intends to return, as distinguished from a place of temporary sojourn or transient visit.'" *State v. Smith*, 185 Wn. App. 945, 954, 344 P.3d 1244 (quoting *State v. Pickett*, 95 Wn. App. 475, 478, 975 P.2d 584 (1999)), *review denied*, 183 Wn.2d 1011 (2015).[4] Therefore, we

---

[4] Fine, the State, and the trial court all used the statutory definition of "fixed residence" in arguing and determining whether Fine's presence in Washington triggered a duty to register as a sex offender. *See* VRP at 282-83 (citing statutory definition of "fixed residence" and arguing "that's the definition that [the State has] to use"); Br. of Appellant at 9 ("The evidence at trial fails to prove Fine established a 'fixed residence' at [A.A.]'s's apartment, which was required to convict him of the failure to register charge as charged and prosecuted."); CP at 72 (trial court defines "residence" using the statutory "fixed residence" definition noted above). We disregard the trial court's misapplication of the term "fixed residence" and apply *Smith*'s definition of "residence."

must review whether sufficient evidence was presented such that a rational trier of fact could find that Fine was "residing" in Washington, as our courts have defined the term.

Here, the State presented sufficient evidence that Fine intended to return to A.A.'s Washington apartment and therefore established that Fine was residing in Washington, triggering the requirement to register as a sex offender. For example, A.A. and Deleon's testimony showed that Fine spent every night of the two months preceding his arrest at A.A.'s apartment.[5] This evidence showed not only that Fine intended to return to A.A.'s apartment nightly, but he actually did. The evidence also showed that Fine kept 90 percent of his possessions at A.A.'s apartment, including his vehicle and his dog. If Fine intended to return to his mother's apartment, he would not have kept so many possessions at A.A.'s apartment, including his pet and mode of transportation. Rather, the presence of so many of Fine's belongings at A.A.'s apartment— including a pet that presumably required regular care and attention—demonstrates that Fine intended to return to A.A.'s apartment. Finally, the recorded phone call between Fine and his mother reflected both an acknowledgment on Fine's part that he was spending time at A.A.'s apartment and an implication that Fine was not living with his mother.

Thus, there is sufficient evidence to show that Fine resided at A.A.'s apartment in Washington. The evidence showed that Fine "'intend[ed] to return'" to A.A.'s apartment and that far from treating it as "'a place of temporary sojourn or transient visit,'" Fine spent substantial amounts of time there for the two months preceding this arrest. *Smith*, 185 Wn. App. at 954 (quoting *Pickett*, 95 Wn. App. at 478). Accordingly, because Fine resided in Washington, his duty

---

[5] In his opening brief, Fine admits that "it was uncontested he spent considerable time [at A.A.'s apartment]." Br. of Appellant at 9.

to register as a sex offender in Washington was triggered. And it is undisputed Fine did not attempt to comply with any Washington registration requirement. Therefore, a rational trier of fact could find beyond a reasonable doubt that Fine resided in Washington, triggering a duty to register as a sex offender, but he failed to do so. Fine's insufficiency of the evidence argument fails.

We affirm Fine's conviction.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Lee, J.

We concur:

Glasgow, C.J.

Price, J.